1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FRANCISCO MORALES-RODRIGUEZ,<br><br>Defendant. | Case No.:  3:23-cr-01818-JO<br><br>**ORDER GRANTING MOTION TO DISMISS THE INDICTMENT UNDER 8 U.S.C. § 1326(D)** |

   On August 12, 2023, the government charged Defendant Francisco Morales-Rodriguez ("Morales-Rodriguez") with illegal reentry in violation of 8 U.S.C. § 1326. Dkt. 1.  Morales-Rodriguez moved to dismiss his indictment for illegal reentry pursuant to 8 U.S.C. § 1326(d) on the grounds that the Department of Homeland Security ("DHS") improperly removed him in 2007 for being convicted of an aggravated felony.  Dkt. 26 ("Mot. Dismiss").   For the reasons set forth below, the Court GRANTS Morales-Rodriguez's motion to dismiss.

/ / /

# I. BACKGROUND

After living in the United States on and off for fourteen years without legal documentation, Defendant Morales-Rodriguez was convicted of a drug crime involving methamphetamine.  On August 16, 2005, Morales-Rodriguez pled guilty to transportation and possession of methamphetamine for sale in violation of California Health and Safety Code ("Cal. HS&C") §§ 11378 and 11379(a).[1]  Dkt. 26-1 at 12 ("Def.'s Exs.").   In December 2007, near the end of his sentence, Morales-Rodriguez was transferred to Calipatria State Prison and placed in a unit with other convicted noncitizens.  *Id.* at 6.

While in custody at Calipatria State Prison, immigration officials provided Morales-Rodriguez with a notice informing him that he faced deportation on account of his 2005 drug conviction.  *Id.* at 6, 17–18.  On December 5, 2007, at 1:00 p.m., a Homeland Security officer handed Morales-Rodriguez two forms, titled Notice of Intent to Issue a Final Administrative Order, Form I-851 ("Notice of Intent" or "Notice") and Certificate of Service.  *Id.* at 17–18.  The Notice of Intent stated that Morales-Rodriguez had entered the United States without inspection on April 24, 2001 and had been convicted of possession of methamphetamine for sale in violation of state criminal law, Cal. HS&C § 11378, on August 16, 2005.  *Id.* at 17–19.  Due to this 2005 conviction, the government deemed Morales-Rodriguez as having been convicted of an aggravated felony for illegal drug trafficking in violation of 8 U.S.C. § 101(a)(43)(B) and deportable on this basis.  *Id.* at 17; *see* 8 U.S.C. § 1227(a)(2)(A)(iii) (establishing that any noncitizen who is convicted of an aggravated felony at any time after admission is deportable).   No other grounds of deportation were noted in the document.  Def.'s Exs. at 17–19.

In addition, the Notice of Intent explained Morales-Rodriguez's options in responding to the removal order, none of which included contesting the government's

---

[1] Morales-Rodriguez has also been convicted of several other crimes.  *See* Dkt. 30 at 3–4 ("Govt.'s Opp'n Mot. Dismiss").  However, these crimes have no bearing on the Court's analysis because he was not removed on account of these convictions.

conclusion that his state conviction constituted an aggravated felony. *Id.* at 17. The document first advised Morales-Rodriguez of his rights, specifying that he had the right to be represented by counsel and that he had ten days to respond. *Id.* With regard to responding to the charges, the Notice detailed Morales-Rodriguez's different options, stating that he could either (1) "rebut the charges stated;" (2) "request an opportunity to review the government's evidence;" (3) "admit deportability;" (4) "designate the country" of removal; or (5) "request withholding of removal" or "withholding/deferral of removal" under the Convention Against Torture. *Id.* The Notice also explained that if he otherwise wished to challenge the removal order, he had fourteen days to petition the appropriate U.S. Circuit Court of Appeal for review pursuant to 8 U.S.C. § 1252. *Id.* Unless he contested his removal, the Notice of Intent stated that he would be placed in expedited removal proceedings ("administrative removal"), in which he would be removed without a hearing before an immigration judge. *Id.*; *see* 8 U.S.C. § 1228 (defining the expedited proceedings designed for non-lawful permanent residents ("LPR") convicted of aggravated felonies); 8 C.F.R. § 238.1. Absent from the Notice was any indication that Morales-Rodriguez had the right to challenge the legality of the government's aggravated felony charge. *See* Def.'s Exs. at 17.

The Certificate of Service, the second document provided to Morales-Rodriguez, allowed him to choose between contesting his removal in one of the ways set forth in the Notice or agreeing to expedited removal proceedings. *Id.* at 18. Like the Notice, this form also did not give Morales-Rodriguez the option to protest the legal validity of his aggravated felony charge. *Id.* Specifically, the document provided Morales-Rodriguez with two overarching options to choose between, each with its own check box: "I Wish to Contest and/or to Request Withholding of Removal" or "I Do Not Wish to Contest and/or to Request Withholding of Removal." *Id.* Under the heading "I Wish to Contest and/or to Request Withholding of Removal," Morales-Rodriguez had the option to contest his deportability by selecting among the following options: (1) I am a U.S. citizen or national;

/ / /

(2) I am an LPR; (3) I was not convicted of the criminal offense described in the allegation; and (4) I am attaching documents in support of rebuttal and request for further review. *Id.* Under the heading "I Do Not Wish to Contest and/or to Request Withholding of Removal," Morales-Rodriguez was provided with two statements to check off:

> I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges. I do not wish to request withholding or deferral of removal. I wish to be removed to [country designated].

> I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right.

*Id.* Finally, the form included space under each of the above options—to contest or not contest the removal—for him to sign and date. *Id.* Nowhere on the Certificate of Service was an option to contest the legality of the government's aggravated felony charge or a blank space to write in this request. *See id.*

Critically, Morales-Rodriguez alleges that no one explained to him the contents of the Notice and Certificate of Service. *Id.* at 6–7. In his declaration, he claims that because the forms were in English, he entirely relied on the representations of the Homeland Security official. *Id.* Instead of translating the forms, the officer allegedly only told Morales-Rodriguez that he was being deported and that he could either consent to departure by signing the form or spend more time in custody fighting his case. *Id.* at 6. After handing these papers to Morales-Rodriguez, this official purportedly instructed what options Morales-Rodriguez should select and where to sign—all without notifying him that the United States was deporting him because he was convicted of an aggravated felony and that he had the right to challenge that charge. *Id.* at 6–7. Of note, the forms also indicate that the DHS agent provided these documents to Morales-Rodriguez at 1:00 p.m. and that

/ / /

Morales-Rodriguez signed them at 1:00 p.m., amounting to less than a minute of review. *Id.* at 18.

Under these purported conditions, Morales-Rodriguez signed the Certificate of Service, admitting the charges alleged in the Notice and agreeing to waive his rights to contest his removal. *Id.* Instead of challenging his deportation, Morales-Rodriguez checked off that he did not wish to contest his deportation and/or request withholding of removal, also selecting that (1) he admitted the allegations and his ineligibility for any form of relief, he waived his right to contest the charges, and he wished to be removed to Mexico; and (2) he waived his right to petition for judicial review. *Id.* While Morales-Rodriguez asserts in his declaration that the agent failed to translate the forms to him, the deportation officer, Carlos Sanchez, signed the form, attesting that he "explained and/or serviced the Notice of Intent" in Spanish to Morales-Rodriguez. *Id.* at 6, 18.

Consistent with his selections on the Certificate of Service, DHS placed Morales-Rodriguez in administrative removal proceedings and deported him soon thereafter. *Id.* at 17. Because Morales-Rodriguez selected that he did not wish to contest his removal order, he was placed in expedited administrative removal proceedings and deported without the opportunity to have a hearing before an immigration judge. *Id.*; *see* 8 U.S.C. § 1228. Accordingly, less than twelve days after signing the document, Morales-Rodriguez was physically removed from the United States. Def.'s Exs. at 7, 20.

After his removal in 2007, Morales-Rodriguez attempted to re-enter the United States on several occasions, culminating in the current illegal reentry charges against him. On March 20, 2009 and again on March 17, 2016, Morales-Rodriguez was removed from the United States after trying to enter this country without documentation. *Id.* at 22; Govt.'s Opp'n Mot. Dismiss at 3. In both instances, DHS removed him by reinstating his 2007 removal order which rested on the government's charge that his 2005 drug conviction constituted an aggravated felony. Def.'s Exs. at 22. On August 12, 2023, Morales-Rodriguez was arrested in the Southern District of California on charges of illegal reentry into the United States. Dkt. 1. On September 6, 2023, a grand jury indicted him with

attempted reentry by a removed undocumented person in violation of 8 U.S.C. § 1326. Dkt. 10.  On September 7, 2023, Morales-Rodriguez entered a plea of not guilty.  Dkt. 11. He now seeks dismissal of the charges on the basis that his initial December 4, 2007 removal order was unlawful.  *See* Mot. Dismiss.

## II. LEGAL STANDARD

A noncitizen who has been issued a valid removal order and subsequently deported from the United States may be charged and convicted of illegal reentry pursuant to 8 U.S.C. § 1326.  In order to convict a noncitizen of illegal reentry, the government must prove that (1) the noncitizen "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding" and (2) thereafter, that he "enter[ed], attempt[ed] to enter, or [was] at any time found in, the United States."  8 U.S.C. § 1326(a).

Because a prior removal is a necessary element of 8 U.S.C. § 1326(a), a defendant may seek to dismiss his charge by undermining the validity of his original removal order.  *See* 8 U.S.C. § 1326(d).  However, the circumstances in which a defendant may challenge his underlying order are limited.  *See id.*  Pursuant to 8 U.S.C. § 1326(d), non-citizens may not challenge "the validity of the deportation order" unless they demonstrate that (1) they "exhausted any administrative remedies that may have been available to seek relief against the order;" (2) "the deportation proceedings at which the order was issued improperly deprived the [noncitizen] of the opportunity for judicial review;" and (3) "the entry of the order was fundamentally unfair."  *Id.*  Accordingly, § 1326(d) only authorizes collateral attack when a defendant meets "all three" conditions of the statute.  *United States v. Palomar-Santiago*, 593 U.S. 321, 326 (2021) (rejecting Ninth Circuit precedent that excused defendants from meeting the first two requirements of § 1326(d) if they were not convicted of an offense that made them removable).

## III. DISCUSSION

Morales-Rodriguez argues that the Court should dismiss his charge of illegal reentry under § 1326(a) because he was improperly removed for being convicted of an aggravated

felony when his state law conviction did not qualify as such.  In order to determine whether he has successfully attacked the validity of his underlying removal order, the Court must determine whether he has satisfied all three conditions of § 1326(d): exhaustion, deprivation of judicial review, and fundamental unfairness.  First, in examining whether the exhaustion requirement has been satisfied, the Court will evaluate whether the removal process afforded Morales-Rodriguez any avenues to challenge the legality of the government's aggravated felony charge; if not, he is excused from administratively exhausting his claim.  Second, the Court will consider whether Morales-Rodriguez has been deprived of judicial review notwithstanding his signed waiver of that protection.  If the removal process failed to provide him with enough information such that he could voluntarily, knowingly, and intelligently waive this right, then the Court must conclude that he was deprived of the judicial review process and its benefits.  Finally, the Court will assess whether his 2007 removal was fundamentally unfair because his 2005 state conviction for methamphetamine possession was wrongfully deemed an aggravated felony under federal law.  The Court will address each of the above issues to determine whether Morales-Rodriguez has met the three prongs required for a successful challenge under § 1326(d) and is, therefore, entitled to a dismissal of his current charge of illegal reentry.

## A. Morales-Rodriguez Could Not Exhaust Administrative Remedies Because No Remedies Were Available to Him

Morales-Rodriguez asserts that he lacked an administrative method to challenge the government's charge that he had committed an aggravated felony under federal law because neither the Notice of Intent, the Certificate of Service, nor any other aspect of the administrative removal process provided any means to do so.  Accordingly, the Court must determine whether he lacked access to administrative remedies to challenge his aggravated felony charge and if so, whether the unavailability of such recourse made exhaustion infeasible under § 1326(d)(1).

While a defendant must demonstrate that he has exhausted his administrative remedies under § 1326(d)(1), he can only do so if these remedies were "available" in the

first place.  8 U.S.C. § 1326(d)(1); *United States v. Portillo-Gonzalez*, 80 F.4th 910, 919 (9th Cir. 2023).  To successfully bring a collateral attack against an illegal reentry charge, a defendant must first show that he has already challenged the validity of his underlying removal through the administrative process.  *Portillo-Gonzalez*, 80 F.4th at 919.  However, he need not make this showing when there were no administrative procedures "capable of use to obtain some relief for the action complained of"—i.e., where he is unable to raise his challenge through the administrative channels available to him.  *Id.* (internal quotation marks and citation omitted) (finding that an immigration judge's misinformation about the availability of voluntary departure did not deprive the defendant of an administrative remedy where he could have appealed the decision).  The Ninth Circuit has recognized that a Notice of Intent and the accompanying Certificate of Service do not provide an "administrative . . . procedure" to contest the legal validity of an alleged aggravated felony. *United States v. Valdivia-Flores*, 876 F.3d 1201, 1205–06 (9th Cir. 2017), *overruled on other grounds by Alfred v. Garland*, 64 F.4th 1025 (9th Cir. 2023).

Here, Morales-Rodriguez has satisfied the requirements of § 1326(d)(1) by showing he did not have an "available" administrative remedy to exhaust.  First, as the Ninth Circuit has established, DHS's Notice of Intent lacks any means to contest the legal conclusion that a noncitizen has committed the aggravated felony as charged in the removal order.  *See Valdivia-Flores*, 876 F.3d at 1205–06.  The option to do so is neither explained in the Notice of Intent nor available in the Certificate of Service.  *See* Def.'s Exs. at 17–19.  While the Notice of Intent states that a noncitizen has the option to "rebut the charges," it does not detail how or on what grounds.  *Id.* at 17.  Similarly, the Certificate of Service only offers noncitizens limited options to challenge their removability.  *Id.* at 18.  Instead, they are invited to check one of the following selections: (1) "I am citizen or national of the United States;" (2) "I am a lawful permanent resident;" (3) "I was not convicted of the criminal offense described;" and (4) "I request withholding or deferral of removal."  *Id.*; *see also United States v. Sam-Pena*, 602 F. Supp. 3d 1204, 1209 (D. Ariz. 2022), *appeal dismissed*, 2022 WL 17403200 (9th Cir. Aug. 30, 2022) (explaining that DHS's

administrative guidance documents affirm that a contested Notice of Intent is "limited to factual matters"). These limited options—none of which include contesting the legality of the aggravated felony charge—provided a process by which Morales-Rodriguez could not dispute the conclusion that his state law conviction constituted an aggravated felony. *See Sam-Pena*, 602 F. Supp. 3d at 1209 (finding that Notice of Intent failed to provide an administrative remedy); *United States v. Castanon-Sanchez*, No. 22 CR 00041, 2023 WL 3601043, at *4 (D. Nev. May 22, 2023) (same); *United States v. Ledezma-Mejia*, No. 20-CR-00403, 2023 WL 4053577, at *2 (D. Or. June 16, 2023) (same).

Second, once Morales-Rodriguez was placed in administrative removal proceedings, he had no further means to contest his deportation. Because Morales-Rodriguez did not challenge his removal when provided with the Notice of Intent and Certificate of Service—as the forms lacked an option to dispute the legal validity of the government's aggravated felony charge—he was subject to the expedited administrative removal process. *See* Def.'s Exs. at 17–18; 8 U.S.C. § 1228. Unlike the standard removal process, in which noncitizens may appear before an immigration judge who, in turn, must inform them of their rights, the administrative removal process offers no additional procedural protections. *See Ledezma-Mejia*, 2023 WL 4053577, at *2 ("The very purpose of § 1228(b) is to provide DHS with an efficient method by which to *expeditiously* remove an unlawful [noncitizen] previously convicted of an aggravated felony." (emphasis in original) (internal quotation marks omitted) (quoting *Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1243 n.3 (10th Cir. 2012))). Accordingly, once the government placed Morales-Rodriguez in this expedited process, he no longer had the right to a hearing, to confer with counsel, or to fight his removal order. *See* 8 U.S.C. § 1228. Without these safeguards, Morales-Rodriguez had no additional opportunities to be notified of his rights and to contest the legality of his aggravated felony charge. *See Valdivia-Flores*, 876 F.3d at 1206.

In sum, neither the Notice of Intent, Certificate of Service, nor the administrative removal proceedings provided Morales-Rodriguez with notice of his right to challenge the legal validity of his aggravated felony charge or the opportunity to do so. Accordingly, the

Court finds that Morales-Rodriguez had no administrative remedies "available" to him to exhaust this claim, satisfying the requirements of § 1326(d)(1).  *Portillo-Gonzalez*, 80 F.4th at 919.

## B. The Government Deprived Morales-Rodriguez of Judicial Review of his Removal Order

As Morales-Rodriguez has satisfied the first prong of § 1326(d), the Court must now determine whether he has demonstrated that he was denied the opportunity to seek judicial review of his removal order as required under § 1326(d)(2).  While Morales-Rodriguez indicated on his Certificate of Service that he waived his right to stay in the United States to seek judicial review, he argues that that this waiver was invalid because he did not understand his rights or intend to surrender them.  *See* Ex. at 18.  Accordingly, the Court must address whether Morales-Rodriguez validly waived his right to judicial review to assess whether he has satisfied § 1326(d)'s second condition.

In order to bring a collateral attack against an underlying removal order under § 1326(d), a defendant must show that the removal proceedings deprived him of the opportunity for judicial review.  *United States v. Aguilera-Rios*, 769 F.3d 626, 630 (9th Cir. 2014).  A noncitizen has the freedom to waive his right to judicial review as long as he did so "voluntarily, knowingly, and intelligently."  *United States v. Ramos*, 623 F.3d 672, 676 (9th Cir. 2010).  Where he has made such a waiver, he cannot claim to have been "deprived" of the opportunity to seek review and thus, cannot satisfy the requirements of § 1326(d).  *Id.* at 680.  However, where the government has obtained a waiver that was not "considered and intelligent," it has effectively prevented the noncitizen from seeking judicial review under § 1326(d)(2).  *Id.* (internal citation omitted). Accordingly, the government must demonstrate, by clear and convincing evidence, that the alleged waiver was valid.  *United States v. Gomez*, 757 F.3d 885, 893–94 (9th Cir. 2014).  A signed form waiver alone does not meet this heavy burden of proof.  *See Ramos*, 623 F.3d at 680–81. Instead, courts must look to the surrounding circumstances to make such a determination, considering factors such as whether the noncitizen received adequate translation and was

informed of his rights and the consequences of waiver. *See id.*; *Valdivia-Flores*, 876 F.3d at 1206; *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049 n. 8 (9th Cir. 2004) ("The due process inquiry focuses on whether [the defendant] *personally* made a 'considered and intelligent' waiver of his appeal." (emphasis in original)).

Here, the Court finds that the government has not met its heavy burden to show that Morales-Rodriguez's waiver was considered and intelligent in light of his claims to the contrary. *See Ramos*, 623 F.3d at 680. Principally, Morales-Rodriguez asserts that he did not know the contents of the Notice of Intent or the Certificate of Service when he provided his signature because the Homeland Security officer did not translate the forms, which were written in English. Def.'s Exs. at 6–7. In opposition, the government points to the DHS agent's signature on the Certificate of Service attesting that he "explained and/or serviced the Notice of Intent" in Spanish to Morales-Rodriguez. *Id.* at 18. However, a signature alone does not amount to clear and convincing evidence that Morales-Rodriguez received competent translation. *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1044 (9th Cir. 2012) (finding that the signature of translation on Notice of Intent was not sufficient to establish valid waiver). Moreover, the timestamps on these documents indicate that Morales-Rodriguez signed his waiver within a minute of receiving the Notice of Intent and Certificate of Service, belying the government's contention that he received effective translation. Def.'s Exs. at 18. Without any evidence "as to the extent of the explanation given or [the immigration officer]'s ability to communicate in Spanish," the government has not made a clear and convincing case that Morales-Rodriguez received enough information in Spanish to make a considered and intelligent waiver. *Reyes-Bonilla*, 671 F.3d at 1044–45 (finding no valid waiver where government did not establish the officer's ability to communicate in Spanish); *see Ramos*, 623 F.3d at 678–79, 681 (finding officer's limited Spanish and "feeling" that the noncitizen understood her was insufficient to establish valid waiver).

Moreover, even if the government could prove that Morales-Rodriguez understood the contents of the Notice of Intent and Certificate of Service, it still could not establish

that the forms adequately advised him of his right to seek judicial review of the government's aggravated felony charge.   Although the forms would have informed Morales-Rodriguez that he had "the right to . . . file a petition for review of this order to the appropriate" circuit court, they would not have notified him that he could challenge the legal validity of the government's aggravated felony charge as discussed above.   *See* Def.'s Exs. at 17; *supra* Section III.A; *Valdivia-Flores*, 876 F.3d at 1205–06 (holding that although the Notice of Intent describes the option to file a petition for judicial review, it does not explicitly inform noncitizens that they can refute the legality of the aggravated felony charge through a judicial procedure).   Without an understanding of the full scope of his rights—one that even a faithful translation of these documents would not have provided—he could not tender a knowing and intelligent waiver.   *See* Def.'s Exs. at 17–18.   Thus, the mere fact that Morales-Rodriguez signed the waiver does not establish that he knowingly forfeited his right to seek judicial review of the legality of the government's aggravated felony charge when the forms excluded this critical information.   *See Reyes-Bonilla*, 671 F.3d at 1044.

In sum, the government has failed to meet its burden to prove that that Morales-Rodriguez knowingly, intelligently, and voluntarily waived his right to judicial review of the legal validity of the government's aggravated felony charge.   It has established neither that Morales-Rodriguez effectively received the information contained in the Notice of Intent and Certificate of Service nor that the contents of those documents, if understood by Morales-Rodriguez, would have provided the information needed for a valid waiver.   The Court therefore concludes that Morales-Rodriguez's administrative removal proceeding "deprived [him] of the opportunity for judicial review," meeting the requirements of § 1326(d)(2).

## C. Morales-Rodriguez's Removal Was Fundamentally Unfair

As the Court has found that Morales-Rodriguez met the first two conditions for attacking his removal—exhaustion of any available remedies and denial of judicial review—it must now determine whether he has established that his removal order was

"fundamentally unfair" as required by § 1326(d)(3).  *Aguilera-Rios*, 769 F.3d at 630. Morales-Rodriguez argues that it was because (1) his 2005 state drug conviction did not constitute an aggravated felony and (2) he was prejudiced by this error in his removal order.

"An underlying removal order is 'fundamentally unfair' if: (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Martinez-Hernandez*, 932 F.3d 1198, 1203 (9th Cir. 2019) (internal citation omitted).  A defendant is deprived of due process by a "defect" if he has been removed on the wrong basis, i.e., on account of being convicted of an aggravated felony when his state law conviction did not qualify as such. *United States v. Guizar-Rodriguez*, 900 F.3d 1044, 1047 (9th Cir. 2018).  Even where a noncitizen is otherwise removable, courts consider removal due to improper charges of an aggravated felony "prejudicial" because *but for* this error, the individual would not have been deported in that instance.  *Id*.

## 1. Morales-Rodriguez Was Wrongly Removed Because His Conviction Is Not An Aggravated Felony

The Court first assesses whether DHS correctly categorized Morales-Rodriguez's 2005 state law drug conviction under Cal. HS&C § 11378 as an aggravated felony under federal law.  In Morales-Rodriguez's removal order, DHS concluded that he violated federal drug trafficking statute 8 U.S.C. § 1101(a)(43)(B), an aggravated felony under federal law, by virtue of violating its state counterpart, Cal. HS&C § 11378.  Def.'s Exs. at 17, 19.  Morales-Rodriguez challenges the equivalency of these two statues, arguing that the state drug statute criminalizes more substances—specifically, certain drug analogs— than the federal statute does and is, thus, broader.  Mot. Dismiss at 16–17.  Morales-Rodriguez contends that because an individual could be convicted for a violation of Cal. HS&C § 11378 without necessarily having violated the federal drug statute 8 U.S.C. § 1101(a)(43)(B), he was wrongly removed for being convicted of an aggravated felony. *Id.* at 14–16.

/ / /

In order to determine whether a state conviction amounts to an aggravated felony, courts employ the categorical approach. *United States v. Werle*, 877 F.3d 879, 881 (9th Cir. 2017). Under this test, courts first compare the scope of a state statute with its federal counterpart. *Id.* Instead of examining a defendant's conduct, courts evaluate the generic elements of both the state and federal statute, recognizing that the Immigration and Nationality Act "asks what offense the [defendant] was 'convicted' of, 8 U.S.C. § 1227(a)(2)(A)(iii), not what acts he committed." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). In evaluating the generic elements, courts analyze whether an individual could be prosecuted under state law for conduct that would not be criminalized under federal law. *Medina-Rodriguez v. Barr*, 979 F.3d 738, 744 (9th Cir. 2020). If the state statute contains more or different elements than the federal statute, the state statute is considered categorically broader than its federal counterpart. *Id.* If the elements mirror one another, however, a conviction under the state statute constitutes an aggravated felony. *Id.*

Second, only if the state statute is categorically broader, should a court then assess the divisibility of the statute—whether its elements "refer[] to several different crimes" or a singular crime. *Descamps v. United States*, 570 U.S. 254, 263 (2013) (internal quotation marks and citation omitted). If a court finds that the statute is divisible, it will then apply the "modified categorical approach," in which it determines which specific crime (out of the multiple crimes prohibited by the same statute) the defendant was convicted of in state court and determine whether that specific crime constitutes an aggravated felony. *Mathis v. United States*, 579 U.S. 500, 505–06 (2016). However, if a state statute is both broader than its federal counterpart and not divisible into separate crimes, then the conviction under the state crime cannot equate a commission of the federal crime. *Rendon v. Holder*, 764 F.3d 1077, 1083 n.6 (9th Cir. 2014). Because the noncitizen's acts would not necessarily have been punishable under federal law, the Court must conclude that his conviction was wrongly deemed an aggravated felony. *Id.*

Accordingly, the Court will first examine whether Cal. HS&C § 11378 is categorically broader than 8 U.S.C. § 1101(a)(43)(B). Only if the Court concludes that

Cal. HS&C § 11378 is categorically overbroad, will it proceed to the second step and evaluate Cal. HS&C § 11378's divisibility.  If Cal. HS&C § 11378 is both broader than its federal counterpart and not divisible into separate crimes, the Court must conclude that the state statute does not constitute an aggravated felony under federal law.  However, if it finds that it is divisible, the Court will then employ the modified categorical approach and determine whether Morales-Rodriguez's specific conviction is an aggravated felony.

### a.  Cal. HS&C § 11378 is Categorically Broader than Its Federal Counterpart with Respect to Controlled Substance Analogs

First, the Court must evaluate whether the elements of California's drug possession statute, Cal. HS&C § 11378, are broader than the elements of its federal counterpart, drug trafficking statute 8 U.S.C. § 1101(a)(43)(B).  Morales-Rodriguez argues that Cal. HS&C § 11378 is more expansive than 8 U.S.C. § 1101(a)(43)(B) because its definition of a controlled substance analog—a substance that resembles but does not meet the formal definition of a controlled substance—is broader than the corresponding federal definition.  Mot. Dismiss at 14–19.  Specifically, he asserts that the federal definition of controlled substances is narrower because federal law requires that an analog be substantially similar in both structure and effect to a controlled substance whereas California law only requires that one of these elements be met.[2]  *Id.*

Under the categorical approach, courts principally "compare the elements of the state statute of conviction to the generic federal definition."  *Werle*, 877 F.3d at 881.  However, they may not consider "the particular facts underlying the prior convictions" nor "the label a State assigns to [the] crime[s]."  *Shular v. United States*, 589 U.S. 154, 157 (2020) (internal citation and quotation marks omitted).  By looking at these elements, a court must

---

[2] Morales-Rodriguez also argues that California law's definition of controlled substances is broader than the federal definition because the California definition is not exclusive to substances intended for human consumption whereas the federal definition explicitly requires that it be used for such purposes.  Mot. Dismiss at 19–21.  However, because the Court decides this issue on Morales-Rodriguez's first theory, it does not address his alternative argument.

determine whether "the [state] statute of conviction criminalizes only as much (or less) conduct than the generic offense." *Medina-Rodriguez*, 979 F.3d at 744. "If the language of the state statute only reaches conduct that falls into the generic federal definition, a conviction under that law is categorically [an aggravated felony] and [the court's] inquiry is at an end." *Werle*, 877 F.3d at 881. However, "[i]f the state statute regulates more conduct than the federal offense, it is overbroad." *United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1152 (9th Cir. 2020). For controlled substance statutes, courts must also assess the breadth of the respective drug schedules—the statutes defining and categorizing controlled substances—because "[a] mismatch between state and federal drug schedules triggers a finding of overbreadth of the state statute using the categorical approach." *Medina-Rodriguez*, 979 F.3d at 747. In evaluating whether a state statute is broader than its federal counterpart, a court should ask whether that difference is merely theoretical or if there is "a realistic probability . . . that the State would apply its statute to conduct that falls outside the generic [federal] definition of a crime." *Id.* at 745 (internal quotation marks and citation omitted). To make such a demonstration, a defendant must identify a specific instance in which the state courts in fact did apply the state statute more broadly than federal law would permit. *Id.*; *see also Nunez v. Holder*, 594 F.3d 1124, 1129 (9th Cir. 2010) (establishing that one case suffices to establish a "realistic probability" that the state government would prosecute such conduct), *overruled on other grounds by Betansos v. Barr*, 928 F.3d 1133 (9th Cir. 2019).

Here, the Court holds that the California statute for possession of methamphetamine for sale, Cal. HS&C § 11378, criminalizes more conduct than its federal counterpart, 8 U.S.C. § 1101 (a)(43)(B), because it defines controlled substances more broadly. Principally, the Court recognizes that California law and federal law both criminalize possession of controlled substances and treat controlled substance analogs equally to controlled substances. *See* Cal. HS&C §§ 11378, 11401(a); 8 U.S.C. § 1101(a)(43)(B); 21

/ / /

/ / /

U.S.C. § 812.[3]  However, there are noticeable distinctions in the way that California law and federal law define controlled substance analogs.  *Compare* Cal. H&S § 11401(b) *with* 21 U.S.C. § 802(43)(a).  Under California law, a controlled substance analog is either of the following:

> (1) A substance the chemical structure of which is substantially similar to the chemical structure of a controlled substance classified in Section 11054 or 11055 or a synthetic cannabinoid compound defined in Section 11357.5.
>
> (2) A substance that has, is represented as having, or is intended to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to, or greater than, the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance classified in Section 11054 or 11055 or a synthetic cannabinoid compound defined in Section 11357.5.

Cal. H&S § 11401(b).  However, under federal law, a controlled substance analog is a substance:

> i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
>
> (ii) **which** has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; **or**
>
> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant,

---

[3] *See* Cal. HS&C §11378 ("[A] person who possesses for sale a controlled substance" "shall be punished by imprisonment."); Cal. H&S § 11401(a) ("A controlled substance analog shall . . . be treated the same as the controlled substance."); *see also* 8 U.S.C. § 1101 (a)(43)(B) (An "aggravated felony" means "illicit trafficking in a controlled substance (as defined in section 802 of title 21).); 21 U.S.C. § 812 (A "controlled substance analogue shall . . . be treated, for the purposes of any Federal law[,] as a controlled substance.").

or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(43)(a) (emphasis added).  Comparing the language of the two statutes, the Court finds that California law only requires that a substance have a similar chemical structure *or* similar effect (actual, intended, or represented) on the nervous system as a controlled substance to be an analog whereas federal law mandates that a substance have both elements to be an analog.  *Compare* Cal. H&S § 11401(b) *with* 21 U.S.C. § 802(43)(a).

The Court's interpretation follows a plain language reading of the two statutes at issue.  The state statute, Cal. H&S § 11401(b), explicitly lists the elements in the alternative, stating that "either" structure or effect must be proven.  *See People v. Becker*, 183 Cal. App. 4th 1151, 1156 (2010).  The federal statute on the other hand, uses the below "partially conjunctive" construction in describing analogs:

> i) the chemical structure of which is substantially similar to [the controlled substance];
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than [the controlled substance]; ***or***
> (iii) . . . which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than [the controlled substance.

21 U.S.C. § 802(43)(a) (emphasis added).  Principally, the federal statute indicates that the chemical structure element in (i) is mandatory because there is no "or" following the clause. *Id.* The "or" between the effect on the nervous system element in (ii) and the represented or intended effect element in (iii), however, indicates that these are alternative elements—the definition can be satisfied with one or the other.  *Id.*  Accordingly, the plain language reading of the above reflects that an analog would need to have (1) both a similar chemical structure to a controlled substance; *and* (2) either have the same effect *or* be represented as having/intended to have the same effect on the nervous system as a controlled substance.

*Id.*; *see United States v. Verdug*o, 2023 WL 4611419, at *3 (S.D. Cal. July 17, 2023); *United States v. Flaherty*, 2018 WL 1417216, at *3 (D. Nev. Feb. 2, 2018) ("Simply put, the government must prove both chemical similarity and similarity as to pharmacological effect on the human body when consumed."), *report and recommendation adopted*, 2018 WL 1413970 (D. Nev. Mar. 21, 2018). Although the Ninth Circuit has not ruled on whether this statute should be read partially conjunctively as above, the Court follows the lead of other circuits in finding this interpretation to be the plain and logical reading of the statutory language. *See United States v. Turcotte*, 405 F.3d 515, 523 (7th Cir. 2005); *United States v. Makkar*, 810 F.3d 1139, 1142–43 (10th Cir. 2015); *United States v. McFadden*, 823 F.3d 217, 220 (4th Cir. 2016); *see also McFadden v. United States*, 576 U.S. 186, 194 n.2 (2015) (the government conceding that "for the purpose of this case that [federal law requires the government] prove two elements to show that a substance is a controlled substance analogue"); *but see United States v. Granberry*, 916 F.2d 1008, 1010 (5th Cir. 1990) (stating the test in the disjunctive without discussion). Thus, because 21 U.S.C. § 802(43)(a) requires that the government establish that a substance has a similar effect *in addition to* having a "substantial chemical similarity" while Cal. H&S § 11401(b) only requires that the government prove one of these elements, California law is broader in penalizing possession of controlled substance analogs that would not necessarily qualify as such under federal law.

In addition, Morales-Rodriguez has illustrated that the California statute is not only more expansive in theory, but also in practice as the State has prosecuted a broader class of drugs not covered under federal law. *See Medina-Rodriguez*, 979 F.3d at 745. Morales-Rodriguez has identified two cases in which California state prosecutors relied on this broader language to prosecute methamphetamine analogs on either the "effect" or "structure" element alone rather than on both as would be required under federal law. Mot. Defense at 20. In *People v. Becker*, a California appellate court held that the jury properly found that MDMA or ecstasy could constitute a methamphetamine analog because the jury heard testimony that the drug has "a stimulant effect substantially similar to the stimulant

effect of methamphetamine."  183 Cal. App. 4th at 1156.  Similarly, in *People v. Silver*, a California appellate court concluded that the jury had sufficient evidence to find that MDMA was a methamphetamine analog after hearing expert testimony that the drug had a substantially similar chemical structure to methamphetamine.  230 Cal. App. 3d 389, 392–93, 396 (1991); *see also People v. Davis*, 57 Cal. 4th 353, 359 (2013) (the Supreme Court of California explaining that "[a]s *Silver* and *Becker* demonstrate, the jury may find that MDMA is a[n] . . . analog based on evidence of [its] chemical composition or its effects on the user").  These examples demonstrate that the greater breadth of the state statute is *actual* rather than theoretical—under this statute, individuals can and have been convicted for methamphetamine analogs that would not be criminalized under federal law.  *See also Nunez*, 594 F.3d at 1129.

Because the California definition of a controlled substance analog is more expansive than its federal counterpart, the controlled substance element of Cal. HS&C § 11378 is categorically broader than the controlled substance element of 8 U.S.C. § 1101 (a)(43)(B). *Cf. Rodriguez-Gamboa*, 972 F.3d at 1152–54 (only finding that the California and federal definitions of methamphetamine are a categorical match with respect to geometric isomers on the basis that isomers do not exist in reality).

**b. Cal. HS&C § 11378 is Indivisible with Regards to Controlled Substance Analogs**

Concluding that the California statute is categorically broader than its federal counterpart with respect to controlled substance analogs, the Court proceeds to assess whether Cal. HS&C §11378 is divisible (i.e., treating the possession of methamphetamine and methamphetamine analogs as separate crimes) or indivisible (i.e., treating the possession of methamphetamine and methamphetamine analogs as the same crime).

In order to determine whether a crime charged under a categorically broad state statute can constitute an aggravated felony, courts must evaluate the divisibility of a crime—whether a statute's elements "refer[] to several different crimes" or a singular crime.  *Descamps*, 570 U.S. at 263 (internal quotation marks and citation omitted).  The

Supreme Court has stressed that a statute is only divisible when "it list[s] elements in the alternative, and thereby define[s] multiple crimes." *United States v. Martinez-Lopez*, 864 F.3d 1034, 1039 (9th Cir. 2017) (internal quotation marks and citation omitted); *cf. Rendon*, 764 F.3d at 1083 (explaining that indivisible statutes "i.e., contain a single, indivisible set of elements constituting a single crime" (internal citation and quotation marks omitted)). A statute is not necessarily divisible just because it contains "a disjunctive list;" rather, the central inquiry is whether a statute contains alternative elements defining multiple crimes or alternative means by which a defendant might commit the same crime. *Martinez-Lopez*, 864 F.3d at 1039. In answering this question, federal courts must consult "authoritative sources of state law." *Id.* (quoting *Mathis*, 579 U.S. at 518) (internal quotation marks omitted). Ultimately, "[i]f the jurors need not agree on which method of committing the offense the defendant used," the statute is "indivisible." *Rendon*, 764 F.3d at 1085.

After examining California's criminal law on drug analogs, the Court concludes that Cal. HS&C §11378 treats the possession of methamphetamine and methamphetamine analogs as the same crime, not as separate offenses. While the Ninth Circuit has recognized that the California drug schedule is divisible by the type of controlled substance, such as heroin versus marijuana, *Martinez-Lopez*, 864 F.3d at 1041, the Court finds that it does not treat a controlled substance and its analog as separate crimes. To begin, Cal. H&S § 11401(a) clearly establishes that "[a] controlled substance analog shall . . . be treated the same as the controlled substance." Further, the Supreme Court of California has affirmed that controlled substance analogs must be treated identically to their corresponding controlled substances, explaining that the Legislature only added analogs to the statutory scheme to prevent defendants from "circumvent[ing]" a controlled substance's formal definition. *Davis*, 57 Cal. 4th at 358–59 (analyzing the Legislature's decision to criminalize criminal substance analogs in explaining that a jury may find a defendant guilty for possession of MDMA as possession of a "controlled substance *or* analog" (emphasis added)). In fact, California caselaw clearly indicates that a jury may establish that a substance constituted methamphetamine either by "(1) a controlled substance itself or (2)

3:23-cr-01818-JO

a controlled substance analog." *Becker*, 183 Cal. App. 4th at 1156.  In *Becker*, a California appellate court upheld a defendant's Cal. HS&C §11378 conviction despite contradictory testimony about whether ecstasy was methamphetamine or a methamphetamine analog. *Id.* at 1154–56.  The court affirmed the conviction, holding that a juror could have found that the defendant committed the *same* crime on either ground.  *Id.* at 1156.  Because a juror could have found the defendant guilty under Cal. HS&C §11378 based on possession of methamphetamine or its analog, the court concluded that a jury did not need to unanimously agree on whether the substance at hand was one or the other.  *Id.*; *see also Lorenzo v. Whitaker*, 752 F. App'x 482, 486 (9th Cir. 2019) (unpublished) (explaining that the "methamphetamine element applicable to a conviction under [Cal. HS&C § 11378] is not divisible, because the different varieties of methamphetamine covered by California law are alternative means of committing a single crime rather than alternative elements of separate crimes"); *People v. Schroeder*, 264 Cal. App. 2d 217, 228 (1968) (holding that possession of different types of the same drug—e.g., different types of methamphetamine—"would constitute a single offense" under California law).[4]  In light of this precedent holding that possession of a controlled substance or its analog are alternate ways to commit the same crime (such that a jury "need not agree" on which substance a defendant possessed), the Court concludes that Cal. HS&C § 11378's controlled substance

---

[4] The government argues that the Ninth Circuit's reasoning in *Marinelarena v. Garland*, 6 F.4th 975 (9th Cir. 2021) supports divisibility here.  Govt.'s Opp'n Mot. Dismiss at 7.  The Court disagrees.  In *Marinelarena*, the circuit court found that a California conspiracy statue was divisible, explaining that the underlying criminal drug statute required identification of a specific drug.  6 F.4th at 977.  The government points to the Ninth Circuit's reliance on CALCRIM No. 2300, which instructed that "if the particular controlled substance at issue in the prosecution is not listed in certain statutory schedules, the judge must require the jury to name the specific type of controlled substance and to find whether it is an analog of a listed controlled substance."  *Id.*; Govt.'s Opp'n Mot. Dismiss at 7.  While CALCRIM No. 2300 may require naming the analog, this does not signify that a controlled substance and its analog amount to alternative elements of separate crimes under California law.  *See Martinez-Lopez*, 864 F.3d at 1039. Rather, California caselaw makes clear that a particular controlled substance can be established either by the substance itself or its analog and therefore the jury need not unanimously determine on which grounds to make such a finding.  *See* Cal. H&S § 11401(a); *Becker*, 183 Cal. App. 4th at 1154–56; *Davis*, 57 Cal. 4th at 358–59.

element is indivisible with respect to methamphetamine and its analogs. *Rendon*, 764 F.3d at 1085.

In sum, Cal. HS&C § 11378's definition of a methamphetamine analog is broader than its federal counterpart, signifying that under California law, an individual could be prosecuted for possessing a substance that would not constitute a controlled substance under federal law. Because Cal. HS&C § 11378 treats possession of a controlled substance and its analog as the same offense, the Court cannot differentiate whether a state conviction under this statute involved (1) possession of methamphetamine, which would also violate 8 U.S.C. § 1101(a)(43)(B); (2) an analog that has a similar chemical structure to and effect of methamphetamine that would also satisfy 8 U.S.C. § 1101(a)(43)(B)'s narrower definition; or (3) an analog with either a similar effect of *or* structure to methamphetamine that only qualifies as such under the state's broader definition and would *not* violate 8 U.S.C. § 1101(a)(43)(B). Accordingly, the fact that Morales-Rodriguez was convicted of Cal. HS&C § 11378 does not mean that he necessarily violated 8 U.S.C. § 1101(a)(43)(B). Therefore, because the government could not establish that Morales-Rodriguez violated 8 U.S.C. § 1101(a)(43)(B) by citing his Cal. HS&C § 11378 conviction, it improperly charged him as removable for being convicted of an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). Consequently, the Court holds that Morales-Rodriguez was improperly removed in 2007 from the United States for an aggravated felony conviction when his 2005 state drug conviction did not qualify as one.

## 2. Morales-Rodriguez's Erroneous Removal for Being Convicted of an Aggravated Felony Prejudiced Him

Because the Court finds that Morales-Rodriguez was removed on invalid grounds, it proceeds to assess whether he was prejudiced by this error. *See Martinez-Hernandez*, 932 F.3d at 1203. If the Court determines that Morales-Rodriguez was prejudiced by the erroneous charge of having been convicted of an aggravated felony, then his removal was fundamentally unfair, undermining the validity of his original removal order. *Id.*

/ / /

To determine whether a defendant was prejudiced by a flawed removal order, a court must examine whether the listed conviction in a defendant's removal order "justified" the "removal." *Id.* at 1205. "Where a prior removal order is premised on the commission of an aggravated felony, a defendant who shows that the crime of which he was previously convicted was not, in fact, an aggravated felony, has established both that his due process rights were violated and that he suffered prejudice." *United States v. Guizar-Rodriguez*, 900 F.3d 1044, 1047 (9th Cir. 2018) (quoting *United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015); *Valdivia-Flores*, 876 F.3d at 1210 (same). "[E]ven if the government might have been able to remove [a defendant] on other grounds through a formal removal proceeding, his removal on illegitimate grounds is enough to show prejudice." *United States v. Ochoa-Oregel*, 904 F.3d 682, 686–87 (9th Cir. 2018) (comparing this violation with others that bear "reasonable consequences for unconstitutional government action," including unlawful seizures and coercive confessions). That is because an invalid removal order "implicate[s] the propriety of the removal" in a "fundamental" way. *Aguilera-Rios*, 769 F.3d at 632–33; *see United States v. Mangas*, 2022 WL 898594, at *2 (9th Cir. Mar. 28, 2022) (unpublished) (acknowledging that under *Valdivia-Flores*, a defendant wrongly removed for committing an aggravated felony need not make a showing of prejudice). However, if there are other convictions alleged in the removal order that "could have supported removability," *United States v. Camacho-Lopez*, 450 F.3d 928, 930 n.1 (9th Cir. 2006), or the stated conviction could have constituted another basis for removability, a court will not find prejudice, *Martinez-Hernandez*, 932 F.3d at 1204–05 (finding no prejudice where the listed conviction did not qualify as an aggravated felony because the conviction also constituted another type of removable offense); *cf. United States v. Nunez-Segura*, 2018 WL 3388129, at *4 (S.D. Cal. July 11, 2018) (holding that the court "cannot

/ / /

/ / /

/ / /

rely on a non-noticed conviction" to find that a defendant was unprejudiced by "invalid removal order").[5]

Here, Morales-Rodriguez was prejudiced because he was improperly removed for being convicted of an aggravated felony. As discussed above, his conviction in 2005 under Cal. HS&C § 11378 does not qualify as an aggravated felony. *See supra* Section III.C.1. And because it is the only ground for removal listed in his Notice of Intent, there was no other basis upon which the government could deport him. Def.'s Exs. at 17, 19. While Morales-Rodriguez had been convicted of other offenses that may have rendered him removable, the government neither cited these convictions in the 2007 removal order nor made such charges. *Nunez-Segura*, 2018 WL 3388129, at \*4 (S.D. Cal. July 11, 2018). Moreover, even though he was here without legal documentation, the Notice of Intent did not find him removable on such a basis. Def.'s Exs. at 17. Accordingly, the Court concludes that even if the government might have been able to remove Morales-Rodriguez on other grounds, "his removal on illegitimate grounds" prejudiced him because *but for* this error, he would not have been deported in this instance. *Ochoa-Oregel*, 904 F.3d at 686.

/ / /

---

[5] The government misconstrues this precedent, asserting that because the defendants in *Aguilera-Rios*, *Ochoa-Oregel*, and *Camacho-Lopez* were all LPRs, their invalid removal orders only demonstrated prejudice because they would not have otherwise been removed from the U.S. Govt.'s Opp'n Mot. Dismiss at 10–11. The government asserts that Morales-Rodriguez, however, did not have any right to remain in the U.S. and thus, without showing his eligibility for relief, cannot meet his burden to establish prejudice. *Id.* at 11 (citing *United States v. Reyes-Ruiz*, 747 F. App'x 496, 498 (9th Cir. 2018) (unpublished); *United States v. Perez-Garcia*, 2017 WL 1080941, at \*3 (S.D. Cal. 2017) (finding "legal prejudice cannot be presumed" for non-lawful permanent residents)). However, the Ninth Circuit has not recognized this distinction in its precedent. *See Guizar-Rodriguez*, 900 F.3d at 1046–47 (holding that a non-LPR need not show individual prejudice where he was improperly removed for an alleged aggravated felony). To the contrary, each of the decisions states a general rule in broad terms that when a defendant is removed when he should not have been, his removal was fundamentally unfair. *See United States v. Mayren*, 591 F.Supp.3d 692, 699 (C.D. Cal. 2022), *reconsideration denied*, No. CR 20-00054, 2022 WL 4480567 (C.D. Cal. Aug. 1, 2022). While the Ninth Circuit has acknowledged some inconsistencies in its precedent, it also has established that this law still governs. *Mangas*, 2022 WL 898594, at \*2–3 (J. Lee concurring).

In sum, the Court finds that the government's removal of Morales-Rodriguez was "fundamentally unfair" because it was premised on an aggravated felony he was not convicted of and because he was prejudiced by his removal on these illegitimate grounds. *Martinez-Hernandez*, 932 F.3d at 1203.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Morales-Rodriguez has met his burden to satisfy all of § 1326(d)'s requirements because he has established that (1) he exhausted available administrative remedies; (2) his administrative removal proceeding deprived him of the opportunity for judicial review; and (3) that his 2007 removal order was fundamentally unfair. meeting the requirements of § 1326(d).   Thus, the Court DISMISSES Morales-Rodriguez's indictment for illegal reentry under 8 U.S.C. § 1326 because he has successfully collaterally attacked his underlying removal order.

**IT IS SO ORDERED**.

Dated:  August 13, 2024

_____

Honorable Jinsook Ohta
United States District Judge